# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff/Respondent,<br><br>v.<br><br>GARY RUSHWAM,<br><br>　　　Defendant/Movant. | Case No. 2:05-cr-432-KJD-RJJ<br>　　　　 2:09-cv-00866-KJD-RJJ<br><br>**ORDER** |

　　　Presently before the Court is Movant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#78/82/83). The Government filed a response in opposition (#87) to which Movant replied (#88). The Government also filed a Motion to Extend Time (#86). Though the time for doing so has passed, no response in opposition has been filed. Therefore, the Court grants the motion to extend *nunc pro tunc*.

I. Procedural History

　　　On January 4, 2006, the federal grand jury in Las Vegas, Nevada, returned a superseding indictment (#11) charging Defendant Gary Rushwam with illegal possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a jury trial on October 16, 2006, Defendant was convicted of the offense by the jury's verdict (#48). On April 18, 2007, this Court sentenced (#63/65) Defendant to 188 months' imprisonment, to be followed by five years of

supervised release. Defendant appealed, and the court of appeals affirmed in an unpublished memorandum. See United States v. Rushwam, 275 Fed. Appx. 684 (9th Cir. Apr. 28, 2008) (unpublished). Defendant filed a petition for a writ of certiorari, which the U.S. Supreme Court denied on October 6, 2008. See Sup. Ct. Dkt. #08-5497.

On May 18, 2009, Defendant, acting *pro se*, filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Defendant filed a supplement to his motion on February 7, 2011. In his motion and supplement, Defendant asserts that his trial attorney provided ineffective assistance by "failing to investigate exculpatory evidence that defendant did not reside where alleged to constructive possession [sic]." (#78, at p. 5).

II. Facts

On October 3, 2005, law enforcement officers with the Las Vegas Metropolitan Police Department ("LVMPD") investigating two residential burglaries executed a state search warrant on a mobile home at 3560 Lost Hills Drive in Las Vegas, Nevada. Trial tr. at 18; PSR ¶¶ 5-8; CR 18-1 at 5. The victim of the burglaries had arrived home and interrupted the intruder during the first burglary. PSR ¶¶ 6-7. The victim identified Defendant as the burglar, and said she knew him as "Gary." Ibid. The intruder struck again about six weeks later. PSR ¶¶ 5-6. Police arrested an accomplice to the burglary, who told them that Defendant had committed the crime and had taken the proceeds to 3560 Lost Hills Drive, where the accomplice said Defendant lived. PSR ¶¶ 5. During the execution of the search warrant, officers found three firearms – including a Winchester 12 gauge shotgun, a Ruger rifle, and an Amadeo Rossi 12 gauge double barrel shotgun – in a bedroom closet. Trial tr. at 18, 27, 48. Officers also found numerous items that matched the items reported stolen in the second burglary, and a knife that matched the description of the knife Defendant brandished during the first burglary. PSR ¶ 8.

After officers advised Defendant of his *Miranda* rights, Trial tr. at 22-24, Defendant waived his rights and admitted that he had purchased one of the shotguns and the rifle for $175 about seven

or eight weeks earlier.  Trial tr. at 24, 91-92.  Officers later determined that the double barrel shotgun had belonged to Defendant's girlfriend's deceased husband.  Trial tr. at 92.  While being held at the Washoe County Detention Center, Defendant made several phone calls that were recorded and introduced at trial.  See Trial tr. at 71, 84-85.  In the first call, Defendant asked someone to ask his girlfriend, Linda, to "get somebody in that house that's got no f*cking felony conviction to claim them guns."  Trial tr. at 87; Gov't Exh. 6.  The person to whom Defendant was speaking asked: "Well, whose guns were they?" and Defendant answered "Oh, they were ours. They were mine and Linda's."  Ibid.  In the second call, Defendant again suggested that someone "go in there and tell 'em all the guns are hers," because that would take "charges off [him]."  Trial tr. at 88; Gov't Exh. 7.

In a third phone call, Defendant called Linda and lamented that "it ain't looking good for [him]," but that he had "incriminated [his] own damn self."  Trial tr. at 9; Gov't Exh. 7.  Finally, in a fourth call, Defendant left a voicemail message for Linda, in which he again acknowledged that the guns were his.  Trial tr. at 91; Gov't Exh. 8.

III.  Standard of Law

To establish ineffective assistance of counsel, a defendant must first show that his counsel's conduct was not "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under this standard, the question is whether "counsel's representation fell below an objective standard of reasonableness," and the Court's inquiry begins with a "strong presumption that counsel's conduct [falls] within the wide range of reasonable representation."  United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987) (as amended) (citations omitted).  Second, a defendant must also show that he was prejudiced by that performance.  See Strickland, 466 U.S. at 692.  To do so, he must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

IV. Analysis

The Court finds that Defendant has failed to show that his attorney's performance was deficient. Additionally, even if Defendant's trial counsel's performance was deficient, he was not prejudiced. Defendant asserts that his attorney failed to investigate "defendant's alleged connection to the residence over which defendant needed to have dominion and control." (#78-1 at 6). This assertion is incorrect for two reasons. First, defense counsel at trial did cross-examine a government witness about Defendant's relationship to the mobile home in which the firearms were found. See Trial tr. at 113. Under cross-examination, the government witness acknowledged that the home was not Defendant's "legal address," and that the government had no evidence that Defendant was "the owner of the property of something of that type." Ibid.

Second, the government was not required to prove that Defendant exercised dominion and control over the residence. "To prove constructive possession, the government must prove a sufficient connection between the defendant and *the contraband* to support the inference that the defendant exercised dominion and control over *the [firearms]*." United States v. Gutierrez, 995 F.2d 169, 171 (9th Cir. 1993) (alteration in original, emphasis added). While Defendant correctly notes that "constructive possession can be established by a showing that the firearm was seized at the defendant's residence," (CR 78-1, at 4) (quoting United States v. Kitchen, 57 F.3d 516, 521 (7th Cir. 1995)), such a showing is not necessary to establish possession. "Indeed, an already convicted felon might be wise to keep a gun at his girlfriend's apartment rather than at his own, knowing that if the police were to find a gun in her apartment an innocent explanation might be possible, although difficult, but that if the gun was found in his apartment the suggestion of guilt would be nearly overwhelming." United States v. Wilson, 922 F.2d 1336, 1339 (7th Cir. 1991); see also United States v. Harris, 587 F.3d 861, 866-867 (7th Cir. 2009) (defendant constructively possessed firearms found in his girlfriend's bedroom).

Defense counsel elicited testimony that the mobile home in which the guns were found was not Defendant's legal address. See Trial tr. at 113. In any event, because Defendant's residence at the home was not an element of the offense, defense counsel's performance would not have been deficient even if he had failed to elicit such testimony. Cf. Malicoat v. Mullin, 426 F.3d 1241, 1261 (10th Cir. 2005) (defense counsel not ineffective for failing to elicit evidence that is irrelevant to determination of guilt).

For the same reason, Defendant's claim would fail even if Defendant's counsel should have attempted to present even more evidence that Defendant did not reside at the mobile home, because Defendant does not establish that he suffered prejudice from his attorney's failure to do so. First, Defendant does not show that, if his attorney had conducted a more thorough investigation, he would have been able to show that Defendant did not reside there.[1]

More important, however, even if Defendant did not reside at 3560 Lost Hills Drive and even if his attorney had shown this at trial, there is no "reasonable probability that . . . the result of the proceeding would have been different." See Strickland, 466 U.S. at 694. At trial, the government did not ask the jury to infer Defendant's possession of the firearms from the fact that he "resided" in the home in which the guns were found. To the contrary, the overwhelming evidence of Defendant's

---

[1] Two of the three letters Defendant attaches to his motion and supplement to support his claim that he did not live at the mobile home are of little probative value. A letter from a friend of Defendant's girlfriend Linda, in which the friend claims that Linda "would have told [her]" if Defendant had been living with her, is both unsworn and hearsay at best. (#82, at 5). A letter from the homeowners' association president noting the lack of evidence that Defendant ever registered as a tenant, (#78-1, at 7), does not establish, as defendant claims (#78-1, at 2), that he "never resided" there. Although a third letter asserts Defendant lived at a different address, Defendant provides no evidence that the writer of that letter would have testified to that assertion at Defendant's trial under penalty of perjury. See (#82, at 7). Significant evidence supports the conclusion that Defendant lived at 3560 Lost Hills Drive. Defendant's accomplice during the second burglary told police he lived there and took the proceeds from the burglary there. (#26-1, at 2). The victim of Defendant's burglaries, who knew Defendant only as "Gary," gave police directions to his residence at 3560 Lost Hills Drive. (#18-1, at 8, 14-15). Two of the people detained during the execution of the search warrant, Jody Baker and Linda Moncrief, told police that Defendant lived there. (#18-1, at 16-17). A certificate recognizing an accomplishment by Defendant hung on the living room wall of the residence. Trial tr. at 114-115. Moreover, at Defendant's sentencing hearing, Defendant complained about several alleged "errors" in his presentencing report, see Sent. tr. at 15-17, but did not raise any objection to the report's recitation of his last address as 3560 Lost Hills Drive. See PSR, at 2.

guilt included his own admissions – both to law enforcement officials and to third parties – that the guns were his. Trial tr. at 24, 87-92. Indeed, the jury heard audiotapes of Defendant personally acknowledging his ownership of the guns. Trial Tr. at 87-91; Gov't Exhs. 6-9. In light of Defendant's repeated admissions that the guns were his, there is no reasonable probability that the question of whether he resided at the mobile home, even if answered in the negative, could have resulted in an acquittal. Accordingly, the motion is denied.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Movant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#78/82/83) is **DENIED**;

IT IS FURTHER ORDERED that Respondent's Motion to Extend Time (#86) is **GRANTED** *nunc pro tunc*;

IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**.

DATED this 20th day of April 2012.

_____
Kent J. Dawson
United States District Judge